IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADONAY LARA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 05 C 6209 |
| ) | |
| CHICAGO TRANSIT AUTHORITY ("CTA"), ) | |
| CARLOS FELICIANO, AND ROSCOE L. ) | |
| TRAVIS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER REGARDING
## CTA DEFENDANTS' COMBINED MOTIONS TO DISMISS

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff Adonay Lara ("Lara") filed a Second Amended Complaint (Dkt. No. 64) on January 17, 2007 against the City of Chicago, several Chicago Police Officers, the Chicago Transit Authority ("CTA"), CTA bus driver Carlos Feliciano ("Feliciano") and CTA supervisor Roscoe L. Travis ("Travis"), alleging 42 U.S.C. § 1983 claims of false arrest and retaliation based on Lara's First Amendment rights, conspiracy, and several state law claims. Defendants Feliciano, Travis, and the CTA (collectively "CTA defendants") file the present motion to dismiss Lara's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 71, 72.) For the reasons stated below, the court denies the motion in part and grants the motion in part.

### BACKGROUND

The court recites the relevant facts, accepting as true all well-pleaded factual allegations in the Second Amended Complaint (Dkt. No. 64) and drawing all inferences in favor of Lara.

1

*Hernandez v. City of Goshen*, 324 F.3d 535, 537 (7th Cir. 2003). On April 26, 2004, Lara was standing at a designated CTA bus stop, and saw a CTA bus driven by Feliciano. Lara waved to Feliciano to flag down the bus, but Feliciano—smirking at Lara as he drove by—did not stop at the designated bus stop. While Feliciano passed by Lara, Lara reached out and knocked once or twice on the bus doors to try to get Feliciano's attention. When Feliciano stopped at a nearby stoplight a short distance from the designated bus stop, Lara approached and boarded the bus after Feliciano opened the bus door.

Lara questioned whether Feliciano had seen Lara at the designated bus stop, to which Feliciano responded, "'What, do you have a problem?'" and raised his hands to his sides in an aggravated manner. (Dkt. No. 64 at ¶ 19.) After Lara paid his fare, Lara answered that he "had a problem with Feliciano's unprofessional conduct and planned to make a formal customer service complaint about Feliciano to the CTA." (*Id.*) Lara sat down at a seat and used his cell phone to call the CTA's customer service number and report his complaint about Feliciano's conduct. When Feliciano heard Lara mention Feliciano's badge number to an individual who answered CTA customer service phone number, Feliciano "jumped out of his seat, got off the bus and placed a call on his cell phone." (*Id.*) Upon Lara's "information and belief, Feliciano called the CTA controller and falsely and maliciously complained that plaintiff [Lara] was disturbing the peace." (*Id.* at ¶ 20.) According to Lara, Feliciano "made those false statements in retaliation for plaintiff's exercise of his First Amendment rights." (*Id.*)

Lara believes that the CTA controller called the Chicago Police Department ("CPD") and informed the police that the plaintiff was disturbing the peace. Responding to the alleged call, Chicago police officer Densey Cole arrived at the scene and boarded the bus, ordering Lara to

2

come with him. Lara "immediately stood up to comply with Cole's order but asked Cole on what grounds was he being ordered off the bus." (Dkt. No. 64 at ¶ 22.) Officer Cole responded by "slapping and grabbing plaintiff's forearm and roughly pulling plaintiff by the arm." (*Id.* at ¶ 23.) Lara then followed Officer Cole off the bus allegedly without resistence, but while calling 911 on his cell phone, with the phone set on speakerphone. When Lara again asked the reason for his detention, Officer Cole said, "'I don't need any grounds, you Yuppie!'" (*Id.* at ¶ 24.) After Lara had stepped off the bus, one of two other officers also n the scene, Officers Helson Grannes, took Lara's cell phone and disconnected the phone call to 911 as well as removed the battery from the cell phone. One of these two officers also asked Cole the charge for Lara and Cole responded, "'Resisting arrest.'" (*Id.* at 27.)

Lara was brought down to the police station, where Lara overheard Officer Cole and other police officers discussing what charges could be brought against Lara and "demonstrat[ing] an obvious willingness to invent facts and allegations to support the claims that they were considering." (Dkt. No. 64 at 30.) Lara heard the officers rejecting the charge of resisting arrest over concerns about the "911 recording and any CTA surveillance tapes" from the bus. (*Id.*) The officer also decided against charging Lara with trespass because he had a valid farecard before "fabricat[ing] [a] charge for disorderly conduct." (*Id.*)

Lara was booked on a disorderly conduct charge, supported by false allegations in a misdemeanor complaint, which identified Feliciano as the complainant and Travis, a CTA supervisor, as the signee. In the complaint, Lara notes that Travis was not present at the time of Lara's arrest.

After judicial proceedings on the disorderly conduct charge, Lara was found not guilty on

3

October 28, 2004. Over a year later, on December 9, 2005, Lara filed his initial complaint against the defendants in this litigation, alleging several federal and state law counts. As relevant here, Lara alleges in Count I that Feliciano and Travis along with the CPD officer defendants violated 42 U.S.C. § 1983 by falsely arresting and imprisoning him, maliciously prosecuting him, and retaliating against his right to free speech. Lara also alleges in Count II that Feliciano and Travis engaged in a conspiracy with the individual CPD officers under 42 U.S.C. § 1983 with regard to the violations of his constitutional rights. Lara then brings state law claims of malicious prosecution (Count III) and intentional infliction of emotional distress ("IIED") (Count IV) against Feliciano and Travis along with a claim of indemnification in Count VII and respondeat superior in Count IX against the CTA.

## LEGAL STANDARD

Dismissal of a claim under Rule 12(b)(6) is proper only when it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45 (1957). Unless a plaintiff is alleging fraud, a plaintiff need only plead "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). But a plaintiff may still plead himself out of court. *Lekas v. Briley*, 405 F.3d 602, 613-14 (7th Cir. 2005). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case." *Pleasant v. Risk Mgmt. Alternatives*, No. 02 C 6886, 2003 WL 164227, at *1 (N.D. Ill. Jan. 23, 2003).

ANALYSIS

A.      42 U.S.C. § 1983 Claims

The CTA defendants first argue that Lara failed to state a § 1983 claim against the individual CTA defendants, asserting that they are private actors, or alternatively, were state actors but were not acting under color of state law during Lara's arrest. The court determines that CTA employees have been previously held by other courts to be state actors and addresses the remaining issue of whether the CTA employees were acting under color of law. *See Mainor v. Chicago Transit Authority*, No. 03 C 9102, 2005 WL 3050604, *5 (N.D. Ill. Nov. 15, 2005); *Murphy v. Chicago Transit Authority*, 638 F.Supp. 464, 467 (N.D. Ill. 1986); *see also People v. Chicago Transit Authority,* 64 N.E.2d 4 (Ill. 1945); *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 924 (9th Cir. 2001). For an action to be taken under color of state law, the action must be related to the state authority conferred on the actor, even if not actually permitted, in that the conduct bears similarity to the nature of the defendant's assigned power and duties. *See Mainor*, 2005 WL 3050604. Merely lying to police is insufficient to establish § 1983 liability for false arrest. *Berry v. Lindemann*, No. 00 C 5540, 2006 WL 2536683, *3 (N.D. Ill. Aug. 31, 2006). Furthermore, courts have typically held that, even where a state actor is acting within his or her official capacity, the signing of a criminal complaint does not in-and-of-itself constitute participation in an arrest. *See Meesig v. Bresnahan*, No. 95 C 4918, 1997 WL 639053, *4 (N.D. Ill. Oct. 3, 1997). Where a state actor has knowingly abused his or her state-conferred authority as a state actor by requesting and causing a plaintiff to be arrested and providing information known to be false to police officers, however, the state actor may be considered liable under § 1983. *Yeksigian v. Nappi*, 900 F.2d 101, 102-03 (7th Cir. 1990);

*Frazier v. Bd. of Educ. of the City of Chicago*, No. 03 C. 0755, 2003 WL 21510328, *3 (N.D. Ill. June 27, 2003).

The question is at this stage a close one. At this point in the litigation, based on the allegations in the Second Amended Complaint (Dkt. No. 64), the court finds that Lara may be able to prove § 1983 liability through the exception to the general rule that lying to police is not participation in an arrest. The bus driver, Feliciano, could be shown to be acting under the color of state law if the bus driver had authority and was using that conferred authority to ensure that bus patrons act appropriately on the bus and do not endanger other passengers when the bus driver called the police and requested that Lara be arrested based on false information. *See Arpin*, 261 F.3d at 924. Furthermore, contrary to cases where state actors are held not to be acting under state law for merely lying to police, the allegations of the Second Amended Complaint suggest that the individual CTA defendants called the police directly and requested that the police arrest Lara, and then the individual CTA defendants signed a criminal complaint against Lara for disorderly conduct, all the while knowing that the basis for Lara's arrest was false. *See Berry*, 2006 WL 2536683 at *3. After discovery, the evidence may show that the CTA defendants' actions were not enough to amount to participation in the allegedly false arrest through their state-conferred authority. But at this stage in the litigation, Lara did not plead himself out of court on the issue of whether the individual CTA defendants were state actors acting under color of state law. Hence, the court also rejects the CTA defendants' arguments regarding lack of state action in the § 1983 claim and § 1983 conspiracy claim.

The CTA defendants also argue that Lara has failed to state a claim for retaliation for the exercise of his free speech rights, alleging that Lara's speech must involve a public concern to be

protected. The CTA defendants have engrafted the "public concern" requirement from cases involving government employees who were retaliation against for the exercise of their free speech rights. The Seventh Circuit has yet to hold that such a requirement applies to speech by a non-employee. *See Whitehouse v. Piazza*, No. 05 C 1638, 2007 WL 641543, *8 (N.D. Ill. Feb. 28, 2007); *Chicago Reader v. Sheahan*, 141 F.Supp.2d 1142, 1144 n.1 (N.D. Ill. Apr. 2, 2001). Although Lara still must establish that his speech was protected, Lara's speech need not relate to a public concern in order to be protected. At this stage in the litigation, no allegations in the Second Amended Complaint would lead the court to conclude that Lara's non-employee speech about inadequate CTA service is unprotected speech.

The CTA defendants' additional contention that Feliciano's telephone call to the CTA controller and the relay of the telephone call to the Chicago Police Department was merely speech and does not rise to a retaliatory action must, at this stage, be dismissed. "Not every retaliatory action by a state official is actionable under § 1983." *Villagrana*, 2005 WL 2322808 at * 3. Where a state official's retaliatory action is speech, without threat, coercion, or intimidation of imminent punishment, sanction or adverse regulatory action, the speech is not enough to constitute retaliation for a citizen's free speech. *Id.* Based on the allegations in Lara's complaint, Feliciano's telephone call in alleged retaliation for Lara's free speech brought to bear government power, in the form of the police and Lara's subsequent arrest, on Lara. *See id.* at *4. At this stage of the litigation, Lara's allegations could take Feliciano's and the other CTA defendant's conduct outside the realm of mere speech.

B.     State Law Claims

The court turns next to the state law claims of malicious prosecution, IIED,

indemnification and respondeat superior liability.[1]  The CTA defendants first argue that the state law claims must be dismissed because they are barred by the one-year statute of limitations pursuant to section 41 of the Metropolitan Transit Authority Act ("MTAA").  Section 41 of the MTAA states that

> No civil action shall be commenced in any court against the Authority by any person for any injury to his person unless it is commenced within one year from the date that the injury was received or the cause of action accrued.

70 Ill. Comp. Stat. § 3605/41.  Implicitly acknowledging that if a one-year statute of limitations applies, Lara's state law claims are barred, Lara focuses on arguing that his state law claims are not based on injuries to his person, and so the MTAA should not apply.  Lara argues that the term "injury to his person" was meant to apply to personal injuries or accidents.

The court determines that the CTA defendants are partially correct.  A claim of intentional infliction of emotional distress is considered by Illinois courts to be an injury to one's person.  *See Dahl v. Federal Land Bank Ass'n of W. Ill.*, 572 N.E.2d 311, 314 (Ill. App. Ct.1991); *see also Arnold v. Janssen Pharmaceutica, Inc.*, 215 F.Supp.2d 951, 960 (N.D. Ill. 2002); *Harper v. Mega*, No. 96 C 1892, 1998 WL 473427, *12 (N.D. Ill. Aug. 7, 1998) (interpreting the one-year MTAA limit to apply to IIED claim).  Thus, the one-year statute of limitations under section 41 of the MTAA bars Count IV of Lara's Second Amended Complaint with regard to the individual CTA defendants and any claim of indemnification or respondeat superior for the CTA.

---

[1] There is no respondeat superior liability for federal § 1983 claims, and so this court only considers the underlying state law liability claims for Count IX, and not any allegations of § 1083 liability with regard to the claim of false arrest.  *See, e.g., Bd. of Comm'rs of Byran County, Ok. v. Brown*, 520 U.S. 397, 403 (1997).

Based on research done by the court, however, the court concludes that Illinois law does not consider a claim for malicious prosecution to be an injury to one's person. There is no case law to support the proposition that a claim of malicious prosecution is an injury to one's person, and the Illinois statute of limitations on "personal injuries" separately lists the categories of "injury to the person" and "malicious prosecution." 735 Ill. Comp. Stat. 5/13-202. This separate delineation strongly suggests that Illinois does not consider malicious prosecution to be an injury to the person. The one-year statute of limitations does not apply for claims of malicious prosecution, and Lara need not have given the notice required by section 41 of the MTAA for injuries to one's person.

Lara's claim for malicious prosecution also survives on the merits at this stage. The CTA defendants argue that there was probable cause for the arrest, and thus there can be no claim of malicious prosecution. *See Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1350 (Ill. 1997) (institution of lawsuit without probable cause is an element of a malicious prosecution claim). Contrary to the CTA defendants' assertion that probable cause existed, Lara's allegations, if taken as true, show just the opposite: that there was no probable cause for the CTA defendants' phone call to the police or for the police officers' subsequent arrest of Lara. Lara has alleged that he was not acting disorderly and that Feliciano made false allegations to the police regarding Lara's conduct in retaliation for Lara's exercising his First Amendment rights. Furthermore, Lara's Second Amended Complaint (Dkt. No. 64), if taken as true, can be understood to allege that Feliciano did not believe that Lara had committed an offense, the police officers did not believe that they had nor did they have probable cause to arrest Lara, and there may have been coordination between the individual CTA defendants and the individual officer

9

defendants. There may be evidence that later breaks the causal chain between the CTA defendants' participation in Lara's alleged malicious prosecution, but, at this stage in the litigation, Lara has sufficiently stated a claim for malicious prosecution.

The CTA also asserts that, because Lara is alleging willful and malicious conduct by the individual CTA defendants in his claim of malicious prosecution, the CTA has no indemnity or respondeat superior liability.[2] The CTA cites to 745 Ill. Comp. Stat. 10/2-202, which states that a "public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." Lara argues, however, that the CTA is citing to the wrong statute. The relevant statute according to Lara is 745 Ill. Comp. St. 10/9-202, which states that a "local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages . . . for which it or an employee while acting within the scope of his employment is liable." Lara cites to *Copeland v. County of Macon*, 403 F.3d 929, 932 (7th Cir. 2005) to further support his position that "[e]ven if the employee is acting out of malice, ill will, or self-interest, his conduct may still fall within the scope of employment so long as it is motivated, at least in part, by a purpose to serve the master."

The court agrees with Lara. The employee's liability does not necessarily address the issue of the public entity's indemnification of the employee's actions that are within the scope of employment to a plaintiff. Regardless whether the employee may later have to compensate the

---

[2]The only remaining claim for which the CTA would have any indemnity or respondeat superior liability is Lara's claim of malicious prosecution, since this court is dismissing Lara's claim of intentional infliction of emotional distress and there is no respondeat superior liability for § 1983 claims.

public entity, the public entity still must indemnify the employee acting within the scope of employment in litigation with a tort plaintiff. *See Brown v. King*, 767 N.E.2d 357, 364 (Ill. App. Ct. 2001) ("If an employee were found liable under section 2-202, however, the Sheriff would be liable under traditional respondeat superior principles and section 9-102.") Lara may be able to prove a set of facts that show that the individual CTA defendants were both acted with malice and within the scope of their employment with regard to the malicious prosecution claim, and thus the CTA may still be liable in indemnification and respondeat superior liability. *See Copeland*, 403 F.3d at 932.

Finally, as Lara appears to concede, punitive damages are not available against the CTA. *See* 745 Ill. Comp. Stat. 10/2-102; *Allen v. CTA*, No. 99 C 7614, 2000 WL 126776, *4 (N.D. Ill. Feb. 1, 2000). But Lara argues that defendant CTA supervisor Travis is not immune under the statute because he is not a public official and was not serving in in an official executive, legislative, quasi-legislative or quasi-judicial capacity when Travis signed the criminal complaint against Lara. Section 10/2-102 states:

> Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party. In addition, no public official is liable to pay punitive or exemplary damages in any action arising out of an act or omission made by the public official while serving in an official executive, legislative, quasi-legislative or quasi-judicial capacity, brought directly or indirectly against him by the injured party or a third party.

The term "public official" has been defined as a public employee who has discretion or makes policy. *See Rousey v. City of Johnston City*, No. 05-4174-JPG, 2006 WL 314452, *2 (S.D. Feb. 9, Ill. 2006); *Reese v. May*, 955 F.Supp. 869, 875 (N.D. Ill. 1996). With only the parties' briefs and Lara's Second Amended Complaint (Dkt. No. 64) to go on, it is not clear what duties and

11

responsibilities Travis has as a CTA supervisor. Depending on those duties, Travis may fit the definition of a public official and his signing of a criminal complaint may be within his official executive capacity, such that Travis is shielding from punitive liability. But at this stage in the litigation, without further evidence, this court cannot determine the issue.

CONCLUSION

Accordingly, the combined motion to dismiss (Dkt Nos. 71, 72) brought by the Chicago Transit Authority ("CTA"), Carlos Feliciano, and Roscoe L. Travis is denied in part and granted in part. Counts I, II, and III of the Second Amended Complaint still remain against defendants Feliciano and Travis. Count IV for intentional infliction of emotional distress is dismissed with prejudice against defendants Feliciano and Travis and with regard to indemnification or respondeat superior liability for the CTA. The prayer for punitive damages is stricken as to the CTA but still stands as to defendant Travis. Counts VII and IX against the CTA remain only with regard to the malicious prosecution claim. Plaintiff is ordered to file a Third Amended Complaint consistent with this order on or before June 1, 2007. Defendants are ordered to file an answer to the Third Amended Complaint on or before June 15, 2007. Counsel are requested to hold a Rule 26(f) conference and file a jointly completed Form 35 signed by counsel for each party on or before June 21, 2007. Counsel are requested to submit a courtesy copy of the Form 35 to Chambers on the day of filing. This case is set for a report on status and entry of a scheduling order at 9:00 a.m. on June 26, 2007. The parties are encouraged to discuss settlement.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: May 17, 2007